The Honorable Philip A. Federico Chief Judge Sixth Judicial Circuit Office of the Courts Administrator 150-5th Street North St. Petersburg, Florida 33701
Dear Judge Federico:
You have asked substantially the following questions:
 1. Would the chief judge of a judicial circuit, who is acting pursuant to the provisions of Ch. 48, F.S., as amended by Ch. 88-135, Laws of Florida, and Rule 2.050, Fla.R.Jud.Amin., be clothed with judicial immunity from civil liability for actions taken pursuant to that chapter?
 2. If the chief judge were sued for an allegedly tortious act under 42 U.S.C. § 1983 or other civil rights legislation, would the Attorney General's Office provide representation for the judge?
 3. If the chief judge were found liable in tort for actions taken pursuant to Ch. 48, F.S., as amended by Ch. 88-135, Laws of Florida, would the Division of Risk Management satisfy any judgment entered against the judge?
In summary:
 1. The actions of a chief judge taken pursuant to Ch. 48, F.S., as amended by Ch. 88-135, Laws of Florida, appear to be administrative or ministerial in nature and thus a chief judge is entitled to a qualified, good faith immunity from liability in Title 42 U.S.C. § 1983 actions when carrying out such functions. Pursuant to the provisions of Title 42 U.S.C. § 1983 a chief judge may not be held liable on a theory of respondeat superior or vicarious liability for the actions of a process server certified pursuant to Ch. 48, F.S.
 Florida courts have not made a distinction between judicial and ministerial actions by judges, therefore, in tort actions brought in Florida courts, judges currently enjoy absolute immunity from damages liability for acts performed in the course of their judicial capacities unless such acts are undertaken with a clear absence or jurisdiction.
 2. Pursuant to s. 111.07, F.S., the Department of Legal Affairs may, in its discretion, represent a chief judge in a tort action brought in state court or in a Title 42 U.S.C. § 1983 action in federal court.
 3. A determination of whether the actions of a chief judge are within the scope of his or her judicial responsibilities for purposes of payment of judgments by the Division of Risk Management must be made by the division on a case-by-case basis.
QUESTION ONE
Section 2, Ch. 88-135, Laws of Florida, creates the "Florida Certified Process Server Act," ss. 48.25-48.31, F.S. The act authorizes the chief judge of each judicial circuit to establish an approved list of persons designated as certified process servers. As provided in the statute, "[e]ach person whose name has been added to the approved list is subject to annual recertification and reappointment by the chief judge of a judicial circuit."[1] Those persons on the list are authorized to serve initial nonenforceable civil process within the judicial circuit where they are certified when a civil action has been filed in the circuit or county court.[2]
A list of process servers which has been approved by the chief judge of the circuit is to be maintained by the circuit court administrator and the clerk of the court in each county in the circuit.[3] Upon filing an action in the circuit or county court, a person may select a certified process server from the list to serve initial nonenforceable civil process.[4] As provided in the act, a person seeking to add his or her name to the approved list in any circuit shall submit an application to the chief judge of the circuit or the judge's designee on a court prescribed form.[5]
A person must meet certain statutory requirements in order to become a certified process server including attaining the age of 18, having no mental or legal disability, being a permanent resident of the state, and submitting to a background investigation. The chief judge of the circuit may require that applicants submit to an examination testing their knowledge of the laws and rules regarding the service of process and may, periodically, prescribe additional rules and requirements for the eligibility of applicants.[6] A person seeking the addition of his or her name to the approved list of certified process servers shall also:
 Execute a bond in the amount of $5,000 with a surety company authorized to do business in this state for the benefit of any person wrongfully injured by any malfeasance, misfeasance, neglect of duty, or incompetence of the applicant in connection with his duties as a process server. . . .[7]
Liability under Title 42 U.S.C. § 1983
Title 42 U.S.C. § 1983 provides that "[e]very person" who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages. The courts have, however, accepted that "[e]very person," means "every person except judges."[8]
As a general rule, a judge is not liable for acts done in the exercise of a judicial function, within the limits of his or her jurisdiction, no matter how erroneous, illegal, or malicious those acts may be. The term "jurisdiction," in the context of judicial immunity, means the judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power.[9]
However, judicial immunity does not automatically attach to all the types of conduct in which a judge may properly engage, but only to those acts which are of a judicial or quasi-judicial nature. The broad doctrine of judicial immunity does not apply to acts which are not judicial, but which are purely ministerial or administrative in nature. Thus, when a judge acts ministerially or is required to do a ministerial act, he is responsible for error or misconduct in like manner and to the same extent as all other ministerial officers and may enjoy a qualified good faith immunity from civil action.[10] The test for qualified immunity is an objective one: whether the conduct of a governmental official violates clearly established statutory or constitutional rights of which a reasonable person would have known.[11] This test "focuses on the objective legal reasonableness of an official's act."[12]
In Forrester v. White, 108 S.Ct. 538 (1988), the U.S. Supreme Court considered whether a state court judge had absolute immunity from a suit for damages under 42 U.S.C. § 1983 for his decision to dismiss a subordinate court employee. The employee, who had been a probation officer, alleged that she was demoted and discharged because of her sex, in violation of the Equal Protection Clause of the Fourteenth Amendment. The Court concluded that the judge's decisions were not judicial acts for which he should be absolutely immune. While the Court recognized that it has never articulated a precise and general definition of the class of acts entitled to judicial immunity, it suggested a distinction between judicial acts and the administrative, legislative, or executive functions that judges may occasionally be assigned by law to perform. As the Court noted, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts."[13] While certain actions taken in demoting and discharging the petitioner in Forrester, like many others involved in supervising court employees and overseeing the efficient operation of a court, may have been important in providing the necessary conditions of a sound adjudicative system, the Court found them to be administrative actions which could not meaningfully be distinguished from employment decisions made by other executive branch officials.
Similarly, the actions of a chief judge in implementing the provisions of the "Florida Certified Process Server Act," would appear to be administrative or ministerial rather than judicial actions.[14] Implementation of the act affords little or no discretion to the chief judge and does not require the judge to perform any judicial or quasi-judicial tasks. Therefore, a chief judge would possess only a qualified good faith immunity for his or her actions under the Florida Certified Process Server Act.
Moreover, a chief judge would not be held liable for the actions of a certified process server in any action brought under Title42 U.S.C. § 1983. The provisions of the statute hold an official liable for his or her personal actions and do not permit recovery on a respondeat superior or vicarious liability theory.[15]
Liability under s. 768.28, F.S.
The Legislature, by enacting s. 768.28, F.S., has waived the State's immunity from tort liability to the extent provided therein. Section 768.28(1), F.S., waives sovereign immunity in tort actions against the state or its agencies or subdivisions to recover money damages for injury or loss of property, personal injury, or death caused by an employee of the agency or subdivision. Such injury or damage must have been sustained while the employee was acting within the scope of his or her office or employment and under circumstances in which the state would be liable if it were a private person.[16] Limited immunity from civil liability in tort actions for certain officers and employees of the state or its subdivisions is provided by s. 768.28(9)(a), F.S., as follows:
 No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human *1886 rights, safety, or property.
As used in this act, "state agencies or subdivisions" include the judicial branch.[17] Without question a chief judge of a judicial circuit is a part of the judicial branch of government. However, Florida courts have determined that the common law principle of judicial immunity was not affected by the enactment of s. 768.28, F.S., and, consequently, judges continue to enjoy absolute immunity from damages liability for acts performed in the course of their judicial capacities unless such acts are undertaken with a clear absence of jurisdiction.[18] While recent federal case law recognizes a distinction between judicial actions and those of an administrative or ministerial nature for purposes of judicial immunity, I am not aware of any Florida case law which has yet made such a distinction in a tort action.
No consideration is given or opinion expressed herein regarding whether a process server certified pursuant to Ch. 48, F.S., as amended by Ch. 88-135, Laws of Florida, is an "officer, employee, or agent of the state or any of its subdivisions" for purposes of s. 768.28, F.S.[19] Such a determination is a mixed question of law and fact which must ultimately be made by a court not by this office. However, in the event an action is brought against a chief judge for injury or damages suffered as a result of an act, event, or omission of a certified process server, such action would be against the chief judge in his or her official capacity.[20]
Such an action against a chief judge would not subject the judge to personal liability but would limit recovery to an action against the judge in his or her official capacity.
QUESTION TWO
Section 111.07, F.S., provides in part that "[l]egal representation of an officer, employee, or agent of a state agency may be provided by the Department of Legal Affairs." (e.s.) The word "may" is usually employed as implying permissive or discretionary action rather than mandatory conduct.[21]
Thus, the Department of Legal Affairs possesses the discretion, rather than any mandatory duty, to provide legal representation pursuant to s. 111.07, F.S.[22]
QUESTION THREE
A determination of whether the actions taken by a chief judge pursuant to Ch. 48, F.S., as amended, are within the scope of the judge's responsibility for purposes of payment of judgments by the Department of Insurance, Division of Risk Management, must be made by that agency. Such a determination must be based on the facts involved in each case.[23]
In an effort to provide you with some general guidance, however, I note that s. 284.30, F.S., establishes a state self-insurance fund designated as the "Florida Casulaty Insurance Risk Management Trust Fund" which is to provide insurance for, among other things, general liability and federal civil rights actions and court-awarded attorney's fees in other proceedings against the state. Section 284.31, F.S., describes the scope and types of coverage to be provided by the Insurance Risk Management Trust Fund, which, pursuant to the statute, shall "cover all departments of the State of Florida and their employees, agents, and volunteers. . . ." The insurance programs developed in Part II, Ch.284, F.S.,[24] provide that, with regard to a claim for damages in a tort action against the state, the limits of liability are those provided in s. 768.28, F.S.[25] However, such limits of liability do not apply to civil rights actions arising out of42 U.S.C. § 1983, or similar federal statutes. [26] Thus, to the extent determined by the Department of Insurance, Division of Risk Management, it would appear that the insurance programs described in Part II, Ch. 284, F.S., would provide insurance coverage for general liability and federal civil rights actions and court-awarded attorney's fees in actions brought against a chief judge as described herein.
Sincerely,
Robert A. Butterworth Attorney General
(gh)
[1] Section 48.27(1), F.S., as created by s. 3, Ch. 88-135, Laws of Florida.
[2] Section 48.27(2), Ch. 88-135, supra. And see, AGO 89-1, which defines "initial nonenforceable civil process" as that initial civil process which is not required by statute to be served by the sheriff.
[3] Section 48.29(1), as created by s. 4, Ch. 88-135, supra.
[4] Section 48.27(2), as created by s. 3, Ch. 88-135, supra.
[5] Section 48.29(2), as created by s. 4, Ch. 88-135, supra.
[6] Sections 48.29(3) and (4), Ch. 88-135, supra.
[7] Section 48.29(3)(g), Ch. 88-135, supra.
[8] See, Harper v. Merckle, 638 F.2d 848, 856 (5th Cir. 1981). And see, Dykes v. Hosemann, 776 F.2d 942 (11th Cir. 1985).
[9] 48A C.J.S. Judges s. 86
[10] Id. at s. 90.
[11] Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982) ("Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are implicated, the public interest may be better served by action taken `with independence and without fear of consequences.' " Harlow at 2739). And see, Malley v. Briggs, 106 S.Ct. 1092 (1986).
[12] Harlow, supra at 2739. And see, Brown v. Clewiston,644 F. Supp. 1417 (S.D.Fla., 1986) ("An officer's actual good faith belief in the propriety of his actions is not really relevant after Harlow. The only inquiry is whether a reasonable person in the officer's position could have believed his actions were lawful." at 1419, footnote 3).
[13] Forrester v. White, 108 S.Ct. 538, 544 (1988).
[14] Cf., Rule 2.050 Fla.R.Jud.Admin., which fixes administrative responsibility in the chief judges of the circuit courts and which provides that "[t]he chief judge shall exercise administrative supervision over all courts within the judicial circuit in the exercise of judicial powers and over the judges and officers of the courts." (e.s.)
[15] See, Carr v. Bell, 492 F. Supp. 832, 835 (N.D.Fla., 1980); Lloyd v. Hines, 474 So.2d 376, 379 (1 D.C.A.Fla., 1985) (a supervisory official may not be held liable under s. 1983 on a respondeat superior or vicarious liability theory). Cf., AGO 88-16, discussing the state and federal tort liability of a state attorney.
[16] See also, s. 768.28(5), F.S., establishing the monetary limitations of the state's waiver of sovereign immunity at $100,000 for a claim or judgment by one person or $200,000 for all claims or judgments arising out of the same incident or occurrence.
[17] Section 768.28(2), F.S.
[18] Berry v. State, 400 So.2d 80, 83 (4 D.C.A.Fla., 1981), petition for review denied, 411 So.2d 380 (Fla. 1981). And see, Salfi v. Ising, 464 So.2d 687, 688 (5 D.C.A.Fla., 1985).
[19] Cf., s. 48.29(3)(g), as created by s. 4, Ch. 88-135, Laws of Florida, which requires a certified process server to "[e]xecute a bond in the amount of $5,000 with a surety company authorized to do business in this state for the benefit of any person wrongfully injured by any malfeasance, misfeasance, neglect of duty, or incompetence of the applicant in connection with his duties as a process server."
[20] Section 768.28(9)(a), F.S. And see, s. 768.28(3), F.S., providing that an a gency or subdivision may request the assistance of the Department of Insurance in the consideration, adjustment, and settlement of any claim under this section.
[21] See, 57 C.J.S. May (1948) pp. 456-457.
[22] See, Nuzum v. Valdes, 407 So.2d 277 (3 D.C.A.Fla., 1981), concluding, in par t, that the activation of the statute entitling public officers to representati on at the public's expense in certain cases was primarily an executive function.
[23] Cf., interoffice memorandum prepared by Division of Risk Management on reque st from State Attorney Michael J. Satz for clarification of division's position relating to payment of judgments by the Department of Insurance, Division of R isk Management.
[24] Sections 284.30-284.42, F.S.
[25] Supra at footnote 21.
[26] Section 284.38, F.S.